## STATE

v.

## Ronald DAME.

Nos. 87–159–M.P, 87–175–M.P.

Supreme Court of Rhode Island.

June 20, 1989.

James E. O'Neil, Atty. Gen., Jane M. McSoley, and Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender and Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

FAY, Chief Justice.

These consolidated cases come before us on the state's petition and the defendant's cross-petition for certiorari. The state seeks reversal of a Superior Court order granting the defendant's motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. The defendant's cross-petition requests a judgment of acquittal or an affirmance of the new-trial order. We affirm the trial justice's decision. The relevant facts are as follows.

The defendant, Ronald Dame, was charged with first-degree arson in violation of G.L.1956 (1981 Reenactment) § 11–4–2. In 1982 defendant was first convicted of this charge. He subsequently appealed and argued that the trial justice erred by summarizing direct testimony. We reversed the conviction and ordered a new trial, finding the trial justice's action constituted prejudicial error. *State v. Dame*, 488 A.2d 418 (R.I.1985).

During the second trial Robert Felber, battalion chief of the Central Falls fire department, testified that on July 10, 1981, a fire nearly destroyed the apartment of Jacqueline Prefontaine at 70 Cottage Street in Central Falls. Henrietta Corneau, another tenant in the building, died when a rescue attempt by firefighters proved un-

successful. Doctor Arthur Burns, a former deputy chief medical examiner, testified that Corneau died of asphyxia due to smoke and carbon monoxide inhalation.

Prior to trial both parties stipulated to the following facts: first, the fire had originated in the bedroom of Prefontaine's apartment, second, the parties agreed to the fact that no accelerants or incendiary devices had been used to start the fire.

The critical factual question was whether the fire started accidentally or was intentionally set. The defendant's prior statement to the police regarding the fire was introduced at trial. The police report acknowledged that defendant was the last person in the apartment. The report also stated that defendant drank a beer and smoked a cigarette prior to falling asleep. The defendant maintained that when he awoke in the bedroom, he discovered flames rolling up the wall behind the bed and onto the ceiling. He then jumped from the bed and fled the building. Outside the building defendant was confronted by Prefontaine, who accused him of setting her apartment on fire. The testimony at trial indicated that defendant responded, "I didn't mean it. I didn't mean it."

John Fiore, an investigator with the State Fire Marshal's office, conducted an investigation to determine the cause and origin of the fire. The state contended, through Fiore's testimony, that the cause of the fire was an intentional application of an open flame to some flammable material. Fiore ruled out the possibility of accidental causes such as an electrical malfunction or a carelessly discarded cigarette. Fiore stated, however, that he found charred pieces of debris, indicating that the bedroom had been littered with newspapers, magazines, and other material. Prefontaine corroborated this testimony, stating that prior to the fire the floor had been covered with rugs, books, and other flammable material. Prefontaine also noted that she kept dozens of candles in her bedroom. Although Fiore insisted the fire was set intentionally, he admitted that no test could later be performed to establish

that an open flame had been applied intentionally and not accidentally.

Additionally Fiore concluded that the point of the fire's origin was the area of the floor next to the bed. Fiore made this determination because that area was the lowest-burned and deepest charred portion of the room, establishing that the fire had burned the longest in that spot. Furthermore, Fiore contended, the longer the fire was burning, the greater the inference that defendant intentionally started the fire. The trial justice permitted Fiore's conclusions in regard to the cause and origin of the fire but refused to qualify him as an expert witness.

On cross-examination defendant rebutted Fiore's conclusion concerning the origin of the fire. The testimony revealed that the ceiling had been consumed by fire and collapsed onto the floor. According to defendant, this resulted in that area of the floor's burning for the longest period of time.

At the close of the state's case, defendant moved for a judgment of acquittal. The trial justice denied the motion and sent the case to the jury. On February 24, 1987, the jury found defendant guilty of first-degree arson, death resulting. The defendant then filed a motion for a new trial in accordance with Rule 33, alleging that the verdict was against the weight of the evidence. Thereafter the trial justice found that the state had failed to prove beyond a reasonable doubt that defendant had knowingly created the fire and granted defendant's new trial motion.

The state subsequently filed a petition for certiorari on April 16, 1987, and defendant filed a cross-petition on April 27, 1987. We issued an order on September 15, 1988, granting both petitions.

 The state maintains that the trial justice usurped the function of the jury by failing to apply the proper standard in granting defendant's motion for a new trial. We have previously held that a trial justice's ruling on a motion for a new trial is entitled to great weight and will be disturbed only when the trial justice overlooked or misconceived material evidence

or was otherwise clearly wrong. *State v. Henshaw*, 557 A.2d 1204, 1207–1208 (R.I., 1989). When ruling on a motion for a new trial, the trial justice need not refer to all the evidence supporting the decision but need only mention sufficient evidence to allow this court to discern whether the appropriate standard was applied. *State v. Barnes*, 122 R.I. 451, 458, 409 A.2d 988, 992 (1979); *State v. DaRocha*, 121 R.I. 182, 185, 397 A.2d 500, 502 (1979).

■ This court clearly delineated the function of a trial justice when considering such a motion in *Fox v. Allstate Insurance Co.*, 425 A.2d 903 (R.I.1981). First, the trial justice must consider all material evidence in light of the charge to the jury. *Id.* at 907. Using independent judgment, the trial justice must pass upon the weight and credibility of the evidence and accept or reject conflicting testimony. *Id.* At that point all proper and appropriate inferences may be drawn from the evidence adduced at trial. *State v. Edwards*, 122 R.I. 228, 236, 405 A.2d 1161, 1165 (1979). The trial justice must then determine whether the evidence presented a controversy upon which reasonable minds could differ or whether the evidence failed to prove guilt beyond a reasonable doubt. *Id.* A new trial may be subsequently granted if the trial justice has reached a different conclusion from that of the jury and if it is specifically found that the verdict is against the fair preponderance of the evidence and fails to do substantial justice. *State v. Henshaw*, 557 A.2d at 1208; *Yammerino v. Cranston Tennis Club, Inc.*, 416 A.2d 698, 699–700 (R.I.1980). The new-trial motion must be denied, however, if the trial justice finds that the evidence is balanced or reasonable minds could differ. *Beauchemin v. Sweeten*, 471 A.2d 624, 626 (R.I.1984) (citing *Yammerino*, 416 A.2d at 699–700).

The trial justice instructed the jury that it could not find Dame guilty of first-degree arson unless each of the elements of the crime was proved beyond a reasonable doubt. The court stated the necessary elements of this case as follows: "(1) that a fire occurred at 70 Cottage Street, Central Falls, on July 10, 1981, (2) that defendant knowingly caused the fire and (3) that on that date the building was occupied." The trial justice further instructed the jury that if each of those elements was established, the state need prove only one of the following to convict the defendant: "(1) that the fire created a substantial risk of serious physical harm to any person; or, (2) that the fire created a substantial risk of serious physical damage to any property; or, (3) that death occurred to Henrietta Corneau as a direct result of the fire."

■ After independently assessing the evidence in light of his jury charge, the trial justice determined that the state had failed to prove that Dame knowingly caused the fire. In reaching this conclusion, the trial justice found that two of Fiore's conclusions were fundamentally flawed. First the trial justice noted that Fiore's finding on the origin of the fire amounted to pure conjecture. The trial justice stated that

"[w]hile it may be true that the greatest amount of charring is indicative that the fire burned longest at that point, it does not necessarily follow that it is at the point where the fire began. [Fiore's] opinion on the point of origin in this case has no probative value because it does not appear to take into account at all the fact that a flaming roof fell to the floor of the bedroom and certainly had to continue to burn."

In addition, the trial justice discounted Fiore's opinion on the cause of the fire. Initially Fiore concluded that an incendiary device had not been used because no such device was discovered during the investigation. Upon further inquiry by the court, however, Fiore contradicted his testimony by admitting that a lit candle might have caused the fire. The trial justice then held that defendant was entitled to a new trial because the state failed to sustain its burden of proof. Therefore, we affirm the trial justice's decision and hold that he complied with the appropriate procedures for granting a new trial.

Next, defendant's cross-petition requests a review of the trial justice's determination on the motion for a new trial. The defen-

dant asserts that the trial justice should have granted defendant's motion for a judgment of acquittal. The state argued that the trial justice's decision on the motion for a new trial was not based upon the judgment of acquittal standard and that, therefore, the judgment of acquittal motion was properly denied.

In *State v. Perkins*, 460 A.2d 1245 (R.I. 1983), this court distinguished the standard used in reviewing a motion for a new trial from the standard applied in deciding a motion for judgment of acquittal. In considering a motion for a new trial, a trial justice uses independent judgment to weigh the evidence and assess the credibility of the witnesses. *Id.* at 1247. The trial justice may reverse and order a new trial upon a determination that the jury's verdict is against the weight of the evidence. *Id.* This standard is distinguishable from the one applied when a judgment of acquittal is filed. When reviewing such a motion, a trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw all reasonable inferences that are consistent with guilt. *State v. Henshaw*, 557 A.2d at 1206–1207 (citing *State v. Caruolo*, 524 A.2d 575, 581 (R.I.1987)). A motion for a judgment of acquittal shall be denied unless the evidence is insufficient to warrant a jury verdict of guilt beyond a reasonable doubt. *State v. Henshaw*, 557 A.2d at 1206 (citing *State v. Burke*, 522 A.2d 725, 734 (R.I.1987)).

In the case at bar the trial justice explicitly set forth the standard he applied in deciding the motion. The trial justice stated that he used independent judgment to consider all the material evidence in the case in light of the jury charge and passed upon the weight of the evidence and the credibility of the witnesses. Clearly this standard articulated by the trial justice is not the standard applied in deciding a motion for judgment of acquittal. We find that the trial justice based his decision on the weight of the evidence and the credibility of the witnesses. Therefore, we hold that the trial justice did not err in denying

defendant's motion for judgment of acquittal.

■ Lastly, the state alleges that the trial justice erred in refusing to allow defendant's allegedly false exculpatory statement to be considered as evidence of guilt. In this jurisdiction the state may rest its case entirely upon circumstantial evidence without disproving any speculation or inferences of innocence. *State v. Caruolo*, 524 A.2d 575, 581 (R.I.1987). The circumstantial evidence, however, must be sufficient proof of guilt beyond a reasonable doubt and will be found insufficient if it merely raises a suspicion or inference of guilt. *Id.*

Through a process of logical deduction, the state may prove guilt from an established circumstantial fact through a series of inferences. *Id.* at 581–82. If this pyramiding of inferences becomes speculative, however, proof of guilt beyond a reasonable doubt will not be found. *Id.; State v. Alexander*, 471 A.2d 216, 218 (R.I.1984); *In re Derek*, 448 A.2d 765, 768 (R.I.1982). We have recognized that pyramiding of inferences becomes speculative when the initial inference rests upon an ambiguous fact that may support other inferences which are clearly inconsistent with guilt. 524 A.2d at 582.

It is well settled that relevant evidence of flight may be used as circumstantial evidence of a defendant's guilt. *State v. Cooke*, 479 A.2d 727 (R.I.1984). Specifically, flight is probative of guilt only if a defendant has knowledge of the reason for fleeing and that reason is related to the crime on trial. *Id.* at 733. If a defendant has fled for a reason other than the one related to the crime, then his flight has no probative value. *Id.*

The defendant went to the Central Falls police station and gave a statement to Detective Bricault of that department. He commented that while in the Prefontaine apartment, he drank a beer and smoked a cigarette before lying down on the bed. Dame further stated that he awoke later and saw flames rolling over the back wall and across the ceiling. He then jumped up, put his shirt and shoes on, and fled from

the apartment. State Fire Marshal Everett Ignagni, qualified as an expert on fire sciences, testified on the fire. He calculated the temperature in the Prefontaine bedroom at the time of the fire at approximately 1500 degrees Fahrenheit. The state argued that even if conditions were as defendant described them, he could not have survived in that room. Therefore, the state asserted that Ignagni's testimony had disproven defendant's statement.

■ We believe that there is evidence in the record that defendant's statement regarding the description of the fire to the police was false. The trial justice evaluated the inferential impact of defendant's statement. He found that even if assumed untrue, the statement could not be used as evidence of defendant's guilt. Because of Ignagni's testimony, the trial justice determined that it was fair to conclude defendant had lied and that he did know how the fire started. The trial justice, however, stated that one may not further conclude that defendant intentionally set the fire. The trial justice found that the evidence clearly established that defendant had caused the fire; however, the state failed to prove how defendant caused the fire. It was the state's burden to prove that defendant's actions were criminal. This burden was not sustained by showing that the fire was caused by negligence or other form of accidental conduct.

The trial justice concluded that the defendant had no obligation to testify and that one could not infer from his refusal to do so that such conduct was criminal. We conclude that the trial justice did not err when he found that the defendant's allegedly false exculpatory statement was insufficient evidence of guilt.

For the reasons stated above, the state's petition and the defendant's cross-petition for certiorari are denied and dismissed and the writ heretofore issued is quashed. The records certified to us are ordered returned to the Superior Court with our decision endorsed thereon.