**STATE**

v.

**Elton SIMPSON.**

**No. 91–353–C.A.**

Supreme Court of Rhode Island.

June 23, 1992.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Mary June Ciresi, North Providence, for defendant.

## OPINION

FAY, Chief Justice.

The defendant, Elton Simpson, appeals a Superior Court conviction whereby he was found guilty of first-degree sexual assault, burglary, assault with a dangerous weapon, and breaking and entering into the dwelling of another without consent. The defendant avers that the trial justice erred in denying his motion for acquittal on a charge of burglary because of an absence of sufficient evidence to establish the necessary element of "breaking." For the reasons stated herein, the defendant's ap-

peal is denied and dismissed and the Superior Court judgment of conviction is affirmed.

On October 28, 1988, defendant was indicted on four counts. Count 1 charged defendant with first-degree sexual assault on Angela Baker (Baker) in violation of G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1987, ch. 238, § 1.[1] Count 2 charged defendant with burglary of Baker's dwelling in violation of G.L.1956 (1981 Reenactment) § 11–8–1.[2] Count 3 charged defendant with assault with a dangerous weapon on Suzanne Cronan (Cronan) in violation of G.L.1956 (1981 Reenactment) § 11–5–2, as amended by P.L.1988, ch. 539, § 8, and count 4 charged defendant with burglary of Cronan's dwelling.[3] The defendant was tried before a jury on March 29, 1990. The following facts were adduced at trial.

During the early morning hours of July 30, 1988, Baker returned to her second-floor apartment located at 24 Lillian Avenue in the city of Providence with Jean Soares (Soares), one of two friends with whom she had spent the evening. Upon entering her apartment, Baker, the mother of three daughters, was greeted by her stepbrother, Imari Adams (Adams), and a baby sitter whom she had hired. Both were sitting in the living room, watching television. The four talked awhile, and Baker eventually retired to her bedroom and fell asleep fully clothed.

At approximately 4 a.m. Baker was awakened in bed by an assailant, clad in only a towel that was wrapped around his head. He held a knife to Baker's throat and gestured to her that she should remain silent. Afraid for her safety, Baker acquiesced and did not attempt to struggle or resist. The assailant removed Baker's pants and underwear and proceeded to rape her.

Seizing an opportunity to escape from the assailant, Baker jumped up and ran from the bedroom into the living room where Adams was sitting. Baker screamed to Adams that a man was in her bedroom and had raped her. Adams grabbed a mop and ran toward the bedroom. The assailant, who at this time was wearing only trousers, ran from the bedroom into the living room. In attempting to find his way out of Baker's apartment, the assailant ran into a walk-in closet, mistaking its door for the front door. As the assailant turned and ran from the closet, the towel fell from his head, at which time Baker recognized him as Elton Simpson, a man who lived two houses from her and whom she had dated casually for a period in 1983. The defendant eventually found the front door to the apartment and fled into the street. Thereafter Baker summoned the police and was taken to the hospital for treatment.

After fleeing Baker's apartment defendant arrived at Cronan's apartment, which was located on Sudbury Street in Providence. Cronan was similarly awakened by defendant, who held a knife to her throat. Cronan recognized defendant as a man with whom she had had prior relations. The defendant informed Cronan that the police were searching for him because he had raped Baker. Cronan indicated that defendant stated that he had gained access to Baker's apartment by climbing through a window. He further indicated that he was going to kill Cronan and himself because, if he could not have Cronan as a girlfriend, nothing else mattered. Cronan,

1. General Laws 1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1987, ch. 238, § 1 provides in pertinent part: "A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, and if any of the following circumstances exist: * * * (B) The accused uses force or coercion."

2. General Laws 1956 (1981 Reenactment) § 11–8–1 provides: "Every person who shall commit burglary shall be imprisoned for life or for any term not less than five (5) years."

3. General Laws 1956 (1981 Reenactment) § 11–5–2, as amended by P.L.1988, ch. 539, § 8 provides in pertinent part: "Every person who shall make an assault or battery, or both, with a dangerous weapon * * * shall be punished by imprisonment for not more than ten (10) years."

eventually able to escape from defendant, fled to a neighbor's home for help.

In addition to the foregoing facts, Baker further indicated that she lived in a two-bedroom apartment. The front door to the apartment opened up into the living room. The two bedrooms were in the rear of the apartment and could be accessed by a short hallway that led to the living room. Her bedroom was adjacent to her daughter's bedroom. However, the only access to her bedroom was by means of a doorway that adjoined her daughter's bedroom. Both bedrooms contained windows; the one located in her daughter's bedroom opened onto a fire escape that led to the street below. Baker further indicated that on the evening of July 30, 1988, the window in her bedroom was held open by sticks, but the opening thereby created was insufficient for anyone to crawl through. In addition Baker testified that although the window in her daughter's bedroom had been left open, the window was covered by a screen that was in its usual closed position.

Upon returning home from the hospital, Baker testified that she noticed a shirt lying on the floor next to her bed and a pair of shoes lying on the floor next to her daughter's bed. Baker did not recognize either of the articles of clothing and had no recollection of either's being present upon her return home during the early morning hours of July 30, 1988. Furthermore, Baker noticed that the screen that had covered the opening of the window in her daughter's room had been pulled up.

Baker's testimony was corroborated by that given by Adams. Adams further indicated that both the front and the rear doors to Baker's apartment remained locked throughout the evening of July 30, 1988. He also noted that the only people to enter the apartment that evening were Baker and Soares.

Following the close of the state's case in chief, defendant made a motion for a judgment of acquittal on all four counts. The trial justice denied defendant's motion with respect to counts 1 through 3 but granted defendant's motion with respect to count 4. Instead the trial justice noted that although the burglary charge contained in count 4 was then dropped, the lesser included offense of breaking and entering without consent remained.

In contrast to the foregoing recital of the events of July 30, 1988, defendant's version of the events that occurred during those early-morning hours is markedly different. The defendant indicated that after giving Baker and a friend a ride downtown earlier on July 29, 1988, Baker extended an invitation to defendant to come to Baker's apartment later that evening. The defendant stated that he was familiar with Baker and with her apartment and within the five or six-month period preceding July 29, 1988, had been dating Baker and had had sexual relations with her.

The defendant further indicated that pursuant to Baker's invitation, he arrived at Baker's apartment later that evening and was allowed inside. He stated that Adams and Soares were sitting in the living room and that Baker invited defendant into her bedroom. The pair engaged in conversation and eventually had sexual intercourse. Afterward defendant claims that he and Baker argued and that he subsequently left in haste.

The defendant alleges that following his departure from Baker's apartment, he decided to visit Cronan, a former girlfriend, to see if he could make amends with her. He claims he knocked on the door and did not get an answer. The door was open, and he entered the apartment and found Cronan asleep in her bedroom. Cronan awoke and insisted that defendant leave. The defendant picked up a knife and threatened to injure himself if Cronan did not allow him to stay. Cronan eventually fled the apartment. The police arrived shortly thereafter and arrested defendant in Cronan's apartment.

Following the close of the evidence, defendant renewed his motion for judgment

of acquittal with respect to counts 1 through 3. Once again defendant's motion was denied. The defendant was thereafter found guilty on all four counts.

On June 26, 1990, defendant was sentenced to forty years each on counts 1 and 2 and ten years each on counts 3 and 4. On July 5, 1990, defendant filed an appeal to this court, claiming that the trial justice erred by denying defendant's motion for judgment of acquittal with respect to the charge of burglary of Baker's dwelling as contained in count 2.

On numerous occasions this court has applied the standard for reviewing the denial of a motion for judgment of acquittal. In doing so, we apply "the same standard the trial justice applies in arriving at his or her ruling." *State v. Capuano*, 591 A.2d 35, 36 (R.I.1991) (quoting *State v. Henshaw*, 557 A.2d 1204, 1206 (R.I.1989)). "The trial justice must determine whether the evidence presented by the state is capable of supporting proof of guilt beyond a reasonable doubt." *State v. Mattatall*, 603 A.2d 1098, 1105 (R.I.1992) (citing *State v. Caruolo*, 524 A.2d 575, 581 (R.I.1987); *State v. Gordon*, 508 A.2d 1339, 1348 (R.I. 1986); *State v. Wheeler*, 496 A.2d 1382, 1389 (R.I.1985)). "To make this determination, the trial court, as well as this court on review, must view all the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of witnesses." *Mattatall*, 603 A.2d at 1105 (citing *Caruolo*, 524 A.2d at 581). The trial justice must draw all reasonable inferences that are consistent with the guilt of the accused. *Capuano*, 591 A.2d at 36; *State v. St. Amant*, 536 A.2d 897, 899 (R.I.1988); *State v. Wilshire*, 509 A.2d 444, 452 (R.I.1986). "Moreover, circumstantial and direct evidence should be given equal weight." *Wilshire*, 509 A.2d at 452. "Unless the evidence so viewed fails to establish defendant's guilt beyond a reasonable doubt, the motion for judgment of acquittal must be denied." *Mattatall*, 603 A.2d at 1105 (citing *State v. Burke*, 522 A.2d 725, 734 (R.I.1987)); *see also Capua-*

*no*, 591 A.2d at 36–37; *St. Amant*, 536 A.2d at 899–900.

Applying the foregoing principles to the instant case, we believe the trial justice properly denied defendant's motion for judgment of acquittal. The defendant avers that the evidence presented was insufficient to prove beyond a reasonable doubt that he committed a burglary of Baker's dwelling. Specifically, defendant contends that the required element of a "breaking" necessary to sustain a conviction of burglary was not proven. The state, on the other hand, contends that the evidence was sufficient for the jurors to conclude that there was a breaking and to find beyond a reasonable doubt that a burglary had occurred. The state maintains that there was sufficient circumstantial evidence adduced at trial for jurors to infer that defendant had in fact entered Baker's apartment by removing the screen from the window located in the daughter's bedroom.

"Breaking" is an essential element of the crime of burglary. *State v. Cline*, 139 Vt. 451, 453, 430 A.2d 455, 456 (1981). This action implies the use of force, no matter how slight. *Id.* (citing *State v. Hart*, 119 Vt. 54, 58, 117 A.2d 387, 389 (1955); *State v. LaPoint*, 87 Vt. 115, 118, 88 A. 523, 524 (1913)). "[T]he real breaking is the removal of the obstruction which, if left as found, would prevent the entering." 139 Vt. at 453, 430 A.2d at 456 (quoting *LaPoint*, 87 Vt. at 119, 88 A. at 524); *see also Robinson v. State*, 67 Md. App. 445, 458, 508 A.2d 159, 166 (1986) (" 'the word "breaking" in the definition of burglary is used in a technical rather than popular sense, and there is a breaking if the intruder, by force, removes an obstacle [which], if left untouched would prevent entrance' "); *State v. Jeremiah*, 546 A.2d 183, 187 (R.I.1988) ("to break means to exert force to gain an entrance"). Other jurisdictions have consistently found the required breaking element for a burglary when a screen from a window is opened, removed, or penetrated. *See People v. Ni-*

*ble,* 200 Cal.App.3d 838, 845, 247 Cal.Rptr. 396, 399 (1988) (when a screen that forms the outer barrier of a protected structure is penetrated, an entry has been made for purposes of the burglary statute); *Barrick v. State,* 233 Ind. 333, 339, 119 N.E.2d 550, 553 (1954) ("[t]he term 'breaking' includes 'putting aside of any material part of the building intended as security against invasion, such as removing a window screen' "); *State v. Simpson,* 299 N.C. 335, 349, 261 S.E.2d 818, 825 (1980) (removal of the screen or a raising of the window constitutes a breaking within the meaning of the law).

■ Although defendant was not observed by any witnesses physically opening the window screen from the bedroom of Baker's daughter, we believe that the circumstantial evidence presented adequately supports a conclusion that defendant did in fact commit a breaking as is required to prove a burglary. "In this jurisdiction the state may rest its case entirely upon circumstantial evidence without disproving any speculation or inferences of innocence." *State v. Dame,* 560 A.2d 330, 334 (R.I.1989) (citing *State v. Caruolo,* 524 A.2d at 581). "The circumstantial evidence, however, must be sufficient proof of guilt beyond a reasonable doubt and will be found insufficient if it merely raises a suspicion or inference of guilt." 560 A.2d at 334. "Through a process of logical deduction, the state may prove guilt from an established circumstantial fact through a series of inferences." *Id.* (citing 524 A.2d at 581–82). "If this pyramiding of inferences becomes speculative, however, proof of guilt beyond a reasonable doubt will not be found." 560 A.2d at 334. (citing *State v. Alexander,* 471 A.2d 216, 218 (R.I.1984); *In re Derek,* 448 A.2d 765, 768 (R.I.1982)).

Baker testified that it was not her practice to leave the screen open in her daughter's bedroom window. Furthermore, she indicated, the screen was in a closed position prior to the time she and her friends left the apartment. Although the window in her own bedroom was held open by sticks, the opening created thereby was insufficient for anyone to enter through it. The fire escape led from the street to the window in her daughter's bedroom, not to the window in her bedroom. Adams testified that both the front and the rear doors were locked throughout the evening. He also testified that the only people he had observed entering through either door were Baker and Soares.

Thus we believe that a trier of fact might properly conclude that the defendant had gained entrance to Baker's apartment by the opening or the removal of the screen to her daughter's bedroom window, which, if left as found, would have prevented the entering. Given the fact that a break was adequately shown by circumstantial evidence, the trial justice properly denied the defendant's motion for judgment of acquittal with respect to count 2 of the indictment charging the defendant with the burglary of Baker's dwelling.

Accordingly the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.