STATE

v.

**Armand T. LUSI.**

**No. 92–310–C.A.**

Supreme Court of Rhode Island.

June 8, 1993.

Jeffrey Pine, Atty. Gen., Andrew Berg, Sp. Asst. Atty. Gen., for plaintiff.

John Tarantino, Sherry Ann Giarrusso, Victoria Almeida, Adler, Pollock & Sheehan, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the basis of four certified questions from the District Court, pursuant to G.L.1956 (1985 Reenactment) § 9–24–27. The relevant facts are not in dispute and are as follows.

The defendant, Armand T. Lusi (defendant or Lusi), was charged with driving under the influence of liquor in violation of G.L.1956 (1982 Reenactment) § 31–27–2, as amended by P.L.1991, ch. 65, § 1. The charge arose out of a stop that occurred on December 6, 1991, at 8:44 p.m. The matter was heard before a justice of the District Court on March 20, 1992. At trial, the

arresting officer, Trooper William Trinque of the Rhode Island State Police, testified that he stopped Lusi for driving in excess of the posted speed limit. Trooper Trinque further testified that, after stopping Lusi, he detected indicia of alcohol. Trinque subsequently charged Lusi with driving under the influence and placed him under arrest.

As part of its case in chief the state introduced into evidence the observation testimony of Trooper Trinque, as well as the results of a breathalyzer test given to Lusi by Trooper Trinque. The test was administered in two phases, the first phase at 9:54 p.m. and the second phase at 10:25 p.m. Each phase of the test indicated that Lusi had a blood-alcohol content (BAC) of 0.11 percent.

At trial, Lusi offered the testimony of Dr. Harvey Cohen, an expert witness in BAC, to rebut the test results. Doctor Cohen testified that there was a "substantial likelihood" or a "reasonable likelihood" that Lusi's BAC at the time he was driving the vehicle was less than 0.10 percent.

Upon completion of the trial the trial justice found that Trooper Trinque's observations of Lusi at the scene and at the police station were insufficient to sustain a conviction. She accepted, however, Dr. Cohen's testimony that Lusi's BAC at the time of driving was less than 0.10 percent. Relying on her findings, the trial justice found Lusi guilty of driving under the influence of liquor in violation of § 31–27–2.

Thereafter, defense counsel asked the court's permission for both parties to file memoranda with respect to the question of whether § 31–27–2 requires the state to prove, by expert extrapolation evidence, a defendant's BAC at the time he or she was actually driving or whether a defendant's BAC at the time the breathalyzer test was administered is proof of BAC at the time of driving. After reviewing the memoranda submitted by the parties, the trial justice issued a decision on May 6, 1992, vacating the guilty verdict pending the resolution by this court of four certified questions. The questions are as follows:

"1) Does [G.L.1956 (1982 Reenactment) § ] 31–27–2 require proof by the State of BAC at time of driving or merely at time of the chemical test?

"2) Is there a presumption that the Defendant's BAC at time of test is the same as at time of driving, and if so, may the Defendant offer evidence to rebut that presumption by demonstrating that his/her BAC at time of driving was less than .10 [percent]?

"3) If the Defendant rebuts the presumption that BAC at time of test is the same as BAC at time of driving, and if there is otherwise insufficient evidence of intoxication to sustain guilt of the offense beyond a reasonable doubt, is the Defendant entitled to a judgment of acquittal?

"4) Does the statute require the state to proceed exclusively on either observations or chemical test results, or can the state satisfy its burden using both observation evidence and chemical test results?"

We shall address questions 1 and 2 together and questions 3 and 4 separately.

### Questions 1 and 2

This court in *State v. Lussier*, 511 A.2d 958 (R.I.1986), observed that "[s]cientific evidence and sad experience demonstrate that any driver with 0.10 percent blood alcohol is a threat to the safety of the public and to himself." *Id.* at 960 (quoting *Burg v. Municipal Court for the Santa Clara County Judicial District*, 35 Cal.3d 257, 267, 673 P.2d 732, 738, 198 Cal.Rptr. 145, 150 (1983)). We recognize, therefore, that many states, including Rhode Island, have passed statutes that prohibit driving with a BAC of 0.10 percent or greater. The first certified question before us today asks whether under § 31–27–2 a blood-alcohol level of at least 0.10 percent determined solely by a breathalyzer test that is administered after a defendant's arrest for drunk driving satisfies the statute or whether extrapolation evidence, which uses the results of a breathalyzer test to demonstrate the blood-alcohol level at the time a defendant was actually driving, is required to establish the statutory offense. Simply stated, the issue is whether it is the blood-alcohol

level at the time of the chemical test or at the time of the operation of the motor vehicle that establishes the statutory offense.

The issue is one of first impression in Rhode Island. It requires this court to interpret the provisions of § 31–27–2, as amended by P.L.1991, ch. 65, § 1. This statute reads in pertinent part as follows:

"Driving under influence of liquor or drugs.—(a) Whoever operates or otherwise drives any vehicle in the state while under the influence of any intoxicating liquor * * * shall be guilty of a misdemeanor * * * .

"(b)(1) Any person charged under subsection (a) of this section whose blood alcohol concentration is one-tenth of one percent (.1%) or more by weight as shown by chemical analysis * * * shall be guilty of violating subsection (a) of this section."

The defendant argues that the statute requires a finding of proof of a BAC of 0.10 percent or more at the time of driving. In so arguing, defendant contends that any contrary interpretation of the statute by this court would render a drunk-driving conviction fortuitous on the basis of when the police officer administered the breathalyzer test as opposed to whether a defendant was actually operating his or her vehicle under the influence of liquor or drugs. The defendant therefore concludes that the state has the burden of extrapolating breathalyzer test results back to the time of actual operation.

In support of his contentions, defendant relies on this court's holding in *State v. Lussier.* In *Lussier* the defendant, who had been found guilty of driving to endanger, death resulting, was also charged with driving under the influence in violation of § 31–27–2. 511 A.2d at 958. In his charge to the jury, the trial justice explained that under Rhode Island law a finding of 0.10 percent or above of BAC was proof of intoxication. *Id.* at 959. The defendant objected to the trial justice's instruction. In affirming the lower court's decision, we ruled:

"[T]he issue is no longer whether a defendant was intoxicated or whether he or she was 'under the influence of liquor' or whether someone's driving ability was impaired in any fashion. * * * The single, decisive issue is whether a motor vehicle is being operated by a driver whose blood-alcohol concentration equals or exceeds one-tenth of one percent." *Id.* at 960.

■ We agree with defendant here that there is no question that, under § 31–27–2, the critical issue is the condition of the driver at the time that he or she was operating the motor vehicle. Consequently the simple answer to question 1 is that § 31–27–2 requires the state to prove a driver's BAC at the time that he or she was stopped on suspicion of driving under the influence. However, the method of proving the BAC at that time is the crux of the first two certified questions and is a question of statutory construction.

First and foremost, we are mindful that in construing § 31–27–2, this court must effectuate the intent of the Legislature. *Krikorian v. Rhode Island Department of Human Services,* 606 A.2d 671, 675 (R.I. 1992); *Lake v. State,* 507 A.2d 1349, 1351 (R.I.1986). Legislative intent is ascertained by an "examination of the language of the statute itself, giving the words of the statute their plain and ordinary meaning." *Krikorian,* 606 A.2d at 675 (quoting *McGee v. Stone,* 522 A.2d 211, 216 (R.I.1987)). We have, however, repeatedly stated that with respect to penal statutes this court will not interpret a statute literally when to do so would lead to an absurd or unreasonable result or would impede a clear legislative intent. *State v. Gonsalves,* 476 A.2d 108, 111 (R.I.1984); *State v. Dussault,* 121 R.I. 751, 754, 403 A.2d 244, 246 (1979).

It is beyond dispute that the Legislature's intent in enacting Rhode Island's drunk-driving statute was to reduce "the carnage occurring on our highways which is attributable to the persons who imbibe alcohol and then drive." *State v. Locke,* 418 A.2d 843, 850 (R.I.1980) (quoting *DiSalvo v. Williamson,* 106 R.I. 303, 305–06, 259 A.2d 671, 673 (1969)). It was with that

clear intent in mind that the Legislature in 1983 made significant changes to this state's drunk-driving laws. Of particular consequence to the question before us is the amendments to § 31–27–2. Public Laws 1983, ch. 227, § 1, added subsection (b) to § 31–27–2. As we have previously indicated, subsection (b)(1) provided for a violation of the statute to be based on a showing of a person's BAC to be "one-tenth of one percent (.1%) or more by weight as shown by chemical analysis of a blood, breath or urine sample." Section 31–27–2(b)(1). Subsection (b)(1), therefore, essentially furnished law enforcement officers in this state with an objective vehicle with which to prove the offense of driving under the influence. Prior to the enactment of subsection (b), the state had to produce an expert witness to demonstrate how alcohol had affected that defendant and to prove the actual intoxication of the same defendant. With the enactment of § 31–27–2, as amended by P.L.1983, ch. 227, § 1, the Legislature expressed a clear intent to rely on breathalyzer-test results whenever possible.[1]

This court had occasion to interpret the provisions of § 31–27–2 in *Lussier, supra*. In his brief, defendant argues strenuously that our holding in *Lussier* stands for the proposition that the offense of driving under the influence is committed when "a motor vehicle is being operated by a driver whose blood-alcohol concentration equals or exceeds one-tenth of one percent," *Lus-*

*sier*, 511 A.2d at 960, thus requiring the state to produce expert extrapolation evidence to relate breathalyzer results back to the time of actual driving. In answering the first certified question, we endorsed defendant's assertion with respect to when a driver commits the offense of driving under the influence. We disagree, however, with defendant's method of proving BAC at the time of driving. Our holding in *Lussier* recognized the validity of the breathalyzer test as a reliable, objective method of proof to establish guilt and upheld the state's right to rely primarily on the results of that test in prosecuting a defendant under § 31–27–2. In so holding, we stated:

> "Once the record indicates one-tenth of one percent or more, the penal consequences will apply without regard to how the alcohol has affected the individual personally. The purpose of the statute is not to relieve the state of its burden to prove defendants guilty beyond a reasonable doubt or to shift the burden to the defendant. It simply removes the necessity of providing an expert at each trial to testify about the effect of that percentage of alcohol upon the defendant's ability to drive." 511 A.2d at 960.

In *Lussier* this court did not explicitly address the question of whether the BAC at the time of operation might be different from the BAC at the time of the breathalyzer test. Implicitly, the assumption in *Lussier* was that the result of the test could be

---

1. Other sections of Rhode Island's drunk-driving statute emphasize the great weight that the Legislature has placed upon breathalyzer-test results. *See, e.g.*, G.L.1956 (1982 Reenactment) § 31–27–2.1, as amended by P.L.1990, ch. 329, § 1 which provides in pertinent part as follows:

> "Refusal to submit to chemical test.—(a) Any person who operates a motor vehicle within this state shall be deemed to have given his consent, to chemical tests of his breath, blood and/or urine * * *. The director of the department of health is empowered to make and file with the secretary of state, regulations which prescribe the techniques and methods of chemical analysis of the person's body fluids * * *."

Section 31–27–2.3, as enacted by P.L.1982, ch. 326, § 1 reads in pertinent part as follows:

> "Revocation of license upon refusal to submit to preliminary breath test.
> " * * *
> "(B) If a person refuses, upon a lawful request of a law enforcement officer, to submit to a [chemical] test under paragraph (A) hereof, that person shall be guilty of an infraction."

Section 31–27–2.5, as amended by P.L.1990, ch. 496, § 1 provides in pertinent part as follows:

> "Chemical tests to persons under eighteen (18) years of age—Refusal—License suspension.— (a) Any person under eighteen (18) years of age who shall refuse to submit to a chemical test as provided in § 31–27–2 shall have imposed all the penalties provided by § 31–27–2.1, but shall have his license suspended on a first violation for six (6) months."

used to determine the BAC at the time of operation. We agree with this assumption in light of the statute's legislative intent based not upon the use of expert extrapolation evidence but upon the drawing of an inference that the BAC at the time a defendant was driving was the same as at the time the test was administered.

■ Although § 31–27–2 is silent with respect to the time that a breathalyzer test must be administered, it is obvious that the test cannot be administered while a defendant is operating his or her motor vehicle. Once a police officer stops an individual for driving under the influence, a certain amount of time passes before the breathalyzer test is administered. At the outset it would be impossible, as a practical matter, for a breathalyzer-test result to reflect a defendant's BAC at the exact time he or she was driving. At minimum, the Rhode Island Department of Health requires that police officers wait at least fifteen minutes following the apprehension of a suspect to administer the first phase of the test. Rhode Island Department of Health Rules and Regulations, 14–060–014 at 8. Consequently the BAC, as determined by a breathalyzer test, can never automatically coincide with the precise moment that a defendant was actually operating his or her motor vehicle, as suggested by the literal language of the statute. We conclude, therefore, that common sense and probability dictate that the trier of fact may draw an inference from the results of a breathalyzer test that the BAC at the time of the test was the same as at the time of actual driving and that the intervention of expert testimony to extrapolate the results of the test back to the time of driving is not

required. To conclude otherwise would place an onerous burden upon the state in prosecuting driving-under-the-influence cases and would be wholly inconsistent with the clear intent of the Legislature in enacting § 31–27–2.

The question remains, however, at what point in time after an individual is stopped for driving under the influence a breathalyzer test should be administered in order for the results to support an inference that the percentage of alcohol was as great at the time of driving.

■ Because we have decided that the Legislative intent of § 31–27–2 obviates the requirement of extrapolation evidence, we conclude that the statute prescribes that the results of a breathalyzer test, which is administered within a reasonable period after the defendant was actually driving his or her motor vehicle, is competent evidence to support an inference that at the time of operation the defendant was in violation of § 31–27–2.² We further conclude that the issue of what constitutes a "reasonable period of time" is a question for the trier of fact in light of the facts and circumstances surrounding each case.

■ With respect to the question of whether a defendant may offer evidence to rebut the inference that a BAC at the time of the testing was as great at the time of actual driving, both the state and defendant concur that once the inference is drawn, competent evidence may be offered in rebuttal. We agree.

■ In *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Unit-

---

**2.** Both defendant and the state have provided the court with a comprehensive review of case law from other jurisdictions pertaining to this issue. We take guidance from the New Jersey Supreme Court in its holding in *State v. Tischio,* 107 N.J. 504, 527 A.2d 388 (1978). In *Tischio* the court interpreted the provisions of N.J. Stat. Ann. 39: 4–50(a) and concluded that the statute neither required nor allowed extrapolation evidence of a defendant's BAC while actually driving. *Tischio,* 107 N.J. at 521–22, 527 A.2d at 397. New Jersey's statute is similar to Rhode Island's statute with respect to when the breathalyzer test should be administered in order to be

admissible as evidence of a defendant's BAC while driving. The New Jersey Supreme Court similarly concluded that a breathalyzer test administered within a reasonable time after operation would comport with the Legislative intent underlying N.J. Stat. Ann. 39: 4–50(a). New Jersey, however, takes the extreme position that such test results are conclusive evidence of the statutory offense and does not allow a defendant to rebut the results with expert testimony. As is evident from our resolution of the second certified question, we do not embrace that position today.

ed States Supreme Court recognized the valuable role that presumptions and inferences play in the adversary system. *Id.* at 156, 99 S.Ct. at 2224, 60 L.Ed.2d at 791. In criminal cases, however, such "evidentiary devices" must be employed with great caution because an inference must never "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Id.* A mandatory presumption in particular poses a far greater threat to the adversary system than a permissive presumption. A permissive presumption allows, but does not require, the trier of fact to infer the elemental fact from proof by the state of the base fact. *Id.* at 157, 99 S.Ct. at 2224, 60 L.Ed.2d at 792. On the other hand, a mandatory presumption requires the trier of fact to find the elemental fact upon proof of the base fact. *Id.* at 157, 99 S.Ct. at 2225, 60 L.Ed.2d at 792. A mandatory presumption may be either rebuttable or irrebuttable. Even if rebuttable, such a presumption still requires the trier of fact to find the elemental fact, unless a defendant persuades the trier that such a finding is unwarranted. *See Francis v. Franklin,* 471 U.S. 307, 314 n.2, 105 S.Ct.1965, 1971 n.2, 85 L.Ed.2d 344, 353 n.2 (1985); *see also Sandstrom v. Montana,* 442 U.S. 510, 517–18, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39, 46–47 (1979). Whether rebuttable or irrebuttable, then, a mandatory presumption has the potential to "affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden." *Ulster County,* 442 U.S. at 157, 99 S.Ct. at 2225, 60 L.Ed.2d at 792. This court in *In re Vincent,* 122 R.I. 848, 413 A.2d 78 (1980), abandoned the use of the term "presumption" and held that whether authorized by statute or otherwise, the term "presumption" should be construed as a permissible inference that the trier of fact is free either to draw or to reject. Naturally, any such inference is rebuttable by competent evidence. Any such statutorily authorized inference must be based upon a rational connection between the fact proven and the inference to be drawn. *See State v. Neary,* 122 R.I. 506, 409 A.2d 551 (1979). Courts

in other jurisdictions have similarly allowed a defendant to rebut the inference that BAC-test results are the equivalent of BAC at the time of driving. *See Woods v. State,* 593 So.2d 103 (Ala.Crim.App.1991); *Williams v. State,* 737 P.2d 360 (Alaska Ct.App.1987); *People v. Pritchard,* 162 Cal.App.3d Supp. 13, 209 Cal.Rptr. 314 (1984); *Ransford v. District of Columbia,* 583 A.2d 186 (D.C.1990); *State v. Wetzel,* 7 Haw.App. 532, 782 P.2d 891 (1989); *State v. Taylor,* 132 N.H. 314, 566 A.2d 172 (1989); *People v. Mertz,* 68 N.Y.2d 136, 497 N.E.2d 657, 506 N.Y.S.2d 290 (1986); *Davis v. Commonwealth,* 8 Va.App. 291, 381 S.E.2d 11 (1989).

■ We therefore conclude that once the inference is drawn that a defendant's BAC at the time of testing is the equivalent of his or her BAC at the time of driving, the defendant may have the opportunity to introduce any competent evidence, including expert testimony, to demonstrate a BAC of less than 0.10 percent at the time of driving.

### Question 3

■ It has well been established under Rhode Island law that the standard necessary for a criminal conviction is proof of guilt beyond a reasonable doubt. *State v. Desrosiers,* 559 A.2d 641, 645 (R.I.1989). Accordingly, in ruling on a motion for judgment of acquittal, the trial judge must view the evidence presented in the light most favorable to the state and draw all reasonable inferences therefrom consistent with the guilt of the accused, without weighing the evidence or assessing the credibility of witnesses. *State v. Clark,* 603 A.2d 1094, 1097 (R.I.1992); *State v. Maggs,* 588 A.2d 601, 605 (R.I.1991); *State v. O'Dell,* 576 A.2d 425, 428 (R.I.1990). If the evidence so viewed fails to establish a defendant's guilt beyond a reasonable doubt, the motion for judgment of acquittal must be granted. *Clark,* 603 A.2d at 1097–98. On review we apply "the same standard the trial justice applies in arriving at his or her ruling." *State v. Simpson,* 611 A.2d 1390, 1393 (R.I.1992) (quoting *State v. Capuano,* 591 A.2d 35, 36 (R.I.1991)).

Consequently, in the present certified question, if a defendant successfully introduces competent evidence that rebuts the inference that his or her BAC at the time of testing was as great at the time of driving, and the state otherwise fails to establish the defendant's guilt beyond a reasonable doubt, then the defendant should be acquitted of violating § 31–27–2. The state concedes in its brief that should this court answer the certified question in this manner, then defendant would be entitled to an acquittal for driving under the influence. In her decision the trial justice accepted the testimony of Dr. Cohen that defendant's BAC was below 0.10 percent at the time he was actually driving. Furthermore, the trial justice determined that Trooper Trinque's observations at the scene and at the West Warwick police station were insufficient to sustain a conviction. Therefore, since defendant successfully rebutted the inference and the state otherwise failed to prove beyond a reasonable doubt that defendant was driving under the influence, defendant is entitled to a judgment of acquittal in respect to the charge of violating § 31–27–2.

### Question 4

In resolving the fourth certified question, we look to the language embodied in § 31–27–2. Pertinent language of the statute allows the state to support a charge of driving under the influence by using evidence proving a BAC of 0.10 percent or greater and "other admissible evidence." Generally this court has permitted the state to rely on evidence other than direct evidence as long as the totality of that evidence constitutes proof of guilt beyond a reasonable doubt. *See State v. Simpson*, 611 A.2d 1390 (R.I.1992); *State v. Mattatall*, 603 A.2d 1098, *cert. denied*, —— U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 74 (1992); *State v. Dame*, 560 A.2d 330 (R.I.1989). Specifically in the statute before us the plain and unambiguous language contained in the phrase "other admissible evidence" makes it unmistakably clear that the Legislature intended to allow the state to supplement the breathalyzer-test results with other evidence. *See generally Ellis v. Rhode Island Public Transit Authority*, 586 A.2d 1055 (R.I.1991) (when language of a statute expresses a clear meaning, such meaning is presumed to be intended by the Legislature). Certainly a police officer's observations of a defendant's conduct at the scene and at the police station would qualify as such supplemental evidence. Since, however, § 31–27–2 simply allows "other admissible evidence," we shall not attempt any further comprehensive definitions of specific types of evidence that may qualify under the statute.

For the foregoing reasons we conclude (1) that a breathalyzer test administered within a reasonable time after driving will support an inference that the percentage of alcohol was as great at the time of driving, (2) that this inference may be rebutted by expert evidence offered by a defendant, (3) that a defendant is entitled to a judgment of acquittal when he or she successfully rebuts the inference and there is otherwise insufficient evidence presented by the state to prove guilt of the offense beyond a reasonable doubt, and (4) that the state may supplement the breathalyzer-test results with other admissible evidence to prove a violation of § 31-27-2. The papers in the case may be remanded to the District Court for further proceedings.

LEDERBERG, J., did not participate.