**STATE**

v.

**Daniel HUNT.**

No. 2014–195–C.A.

Supreme Court of Rhode Island.

April 12, 2016.

---

690

Aaron L. Weisman, Department of Attorney General, for State.

Lara E. Montecalvo, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on March 2, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The defendant, Daniel Hunt, was charged with two counts of second-degree child molestation sexual assault (second-degree child molestation). After a jury trial in the Superior Court, the defendant was convicted on count 1 and acquitted on count 2. He was sentenced to twenty years at the Adult Correctional Institutions, with nine years to serve and eleven years suspended with probation. On appeal, the defendant argues that the trial justice committed reversible error when, in his instructions to the jury and in the jury-verdict form, he failed to adequately inform the jury of the distinction between counts 1 and 2, which were identically worded. Having carefully considered the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown, and the appeal may be decided at this time. We affirm the judgment of the Superior Court.

## Facts and Travel

The defendant began dating Sandra[1] in 2005. They had one child together, and defendant assumed a paternal relationship with Sandra's two older children from a

prior relationship. The romantic relationship between defendant and Sandra ended in 2010, but they remained friends until the summer of 2012, when their relationship soured. Despite the breakup, Sandra's two older children continued to view defendant as their father, and all three children periodically saw him. The defendant, a truck driver, spent substantial time outside the state for work and sometimes slept over at Sandra's home when he was in Rhode Island.

On April 7, 2012, the night before Easter Sunday and months before defendant's friendship with Sandra ended, defendant spent the night at Sandra's home. Several months later, on August 23, 2012, Sandra came across a private message that her oldest child, Emily, had written to a friend on Facebook; in the message, Emily had disclosed to her friend that defendant had inappropriately touched her while he was visiting the night before Easter.[2] The crux of the allegation against defendant was that, on the evening of April 7, 2012, when Emily was twelve years old, defendant twice touched Emily's breasts under her shirt and her bra; in particular, defendant fondled her for "[a]bout 20 minutes," left the room to go outside to his truck, and, upon returning, he touched her again for approximately ten minutes, until Emily retired to her bedroom. A police investigation ensued.

On December 4, 2012, defendant was charged by criminal information with two counts of second-degree child molestation. Both counts charged "[t]hat [Daniel Hunt], * * * on or about the 7th day of April, 2012, in the City of Woonsocket, * * * did engage in sexual contact with [Emily], a person fourteen (14) years of age or under,

---

1. To protect the privacy of the complainant, who is a minor, we use pseudonyms to identify both her ("Emily") and her mother ("Sandra").

2. The Facebook message was not entered into evidence at trial.

in violation of [G.L.1956] § 11–37–8.3 and § 11–37–8.4." [3] The defendant did not seek a bill of particulars in accordance with Rule 7(f) of the Superior Court Rules of Criminal Procedure.

The case was reached for trial in Providence County Superior Court on December 6, 2013. At the close of trial, the trial justice instructed the jury that it was to consider two charges against defendant:

> "In order to convict * * * defendant of second[-]degree child molestation, the [s]tate must prove beyond a reasonable doubt first that on or about April 7, 2012, * * * defendant engaged in two *separate acts* of sexual contact[–]namely[,] * * * defendant touched [Emily]'s breast and *shortly thereafter* again touched [Emily]'s breasts and nipples." (Emphases added.)

The trial justice further charged:

> "[B]ecause * * * defendant has been charged with more than one criminal offense, each alleged violation must be considered by you separately and the [s]tate must prove its case beyond a reasonable doubt as to each offense.
>
> "[D]efendant is entitled to your independent consideration of each of the charges."

Defense counsel raised no objection to the jury instructions, nor did he object to the contents of the jury-verdict form—which listed the charges as follows:

> "1.  As to [c]ount 1, which charges that[,] on or about April 7, 2012[,]

Daniel Hunt committed Second[–]Degree Child Molestation Sexual Assault upon [Emily], a child 14 years old or younger, we the jury find the [d]efendant: [guilty/not guilty].

> "2.  As to [c]ount 2, which charges that[,] on or about April 7, 2012[,] Daniel Hunt committed Second[–]Degree Child Molestation Sexual Assault upon [Emily], a child 14 years old or younger, we the jury find the [d]efendant: [guilty/not guilty]."

During its deliberations, the jury submitted two questions to the trial justice: First, the jurors asked to review Emily's "description of the second touching," and, next, her testimony about "what happened after the first incident." [4] On both occasions, after relevant portions of the transcript were read aloud to the jury, the trial justice asked defendant if he wished to make an objection for the record. The defendant declined each time.

The jury returned a verdict of guilty on count 1 and not guilty on count 2. [5] On January 6, 2014, the trial justice heard and denied defendant's motion for a new trial. The defendant filed this timely appeal.

### Standard of Review

■ . We apply *de novo* review to "issues pertaining to jury instructions." *State v. Vargas*, 991 A.2d 1056, 1060 (R.I. 2010). We "examine[ ] 'the instructions in

---

3.  General Laws 1956 § 11–37–8.3 provides that "[a] person is guilty of a second[-]degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." Section 11–37–8.4 reads: "Every person who shall commit second[-]degree child molestation sexual assault shall be imprisoned for not less than six (6) years nor more than thirty (30) years."

4.  Specifically, in the first question, the jurors asked to review the transcript from Emily's testimony "where she talks about the touching[.] [P]articularly interested in description of the second touching and hand position." They next asked to "hear [Emily]'s testimony covering what happened after the first incident until she went to her room."

5.  The polling of the jury with respect to count 1 revealed that the jurors were unanimous.

# 693

their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, * * * and · * * * review[ ] [the] ʹchallenged portions * * * in the context in which they were rendered.' " *State v. Carpio,* 43 A.3d 1, 10 (R.I.2012) (quoting *State v. Cardona,* 969 A.2d 667, 674 (R.I.2009)). "[A]n erroneous charge [to the jury] warrants reversal only· if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Vargas,* 991 A.2d at 1063 ·(quoting *Maglioli v. J.P. Noonan Transportation, Inc.,* 869 A.2d 71, 75 (R.I.2005)).

### Analysis

■ The defendant· argues on appeal that the trial justice erred in his instructions to the jury and by employing the jury-verdict form. Specifically, defendant asserts that the trial justice failed to sufficiently advise the jury of the distinction between counts 1 and 2. The defendant contends that this failure resulted in the infringement of his constitutional right "to be adequately informed of the nature and cause of the accusations against him."

Fatal to defendant's challenge, however, is the fact that he did not raise this argument until he filed his motion for a new trial. Rule 30 of the Superior Court Rules of Criminal Procedure provides, in relevant part, that "[n]o party may assign as error any portion of the charge or omission therefrom unless · the· party objects thereto before the jury retires to· consider its verdict * * *." This requirement serves the important function of promoting judicial efficiency by alerting the trial justice to "alleged deficiencies" while, there still is an opportunity to rectify them. *State v. Flori,* 963 A.2d 932, 937 (R.I.2009) (quoting *State v. Hallenbeck,* 878 A.2d 992, 1006 (R.I.2005)). For this reason, we repeatedly have declared that a party's fail-

ure to timely object to jury instructions will result in the waiver of that issue on appeal, unless "issues of constitutional dimension are· implicated." *Id.;· see also State v. Mendez,* 116 A.3d ·228; 243 (R.I. 2015) ("With respect to objections to jury instructions in particular, this ·Court has 'consistently been exacting about applying the raise[-]or[-]waive rule.' " (quoting *Ferris Avenue Realty, LLC v. Huhtamaki, Inc.,* 110 A.3d 267, 285 (R.I.2015))). The raise-or-waive rule similarly applies to an appellate challenge to the jury-verdict form if the party fails to object to its use at trial. *State v. Mohapatra,* 880 A.2d 802, 810 (R.I.2005).

■ A defendant who is confronted with an ambiguous complaint or indictment has a remedy: a bill of particulars. *See* Rule 7(f). As we have previously explained, its "function * * * is to provide the defendant with the factual detail omitted from an indictment or information." *State v. Saluter,* 715 A.2d 1250, 1253 (R.I. 1998) (quoting *State v. Collins,* 543 A.2d 641, 654 (R.I.1988), *overruled on other grounds, State v. Rios,* 702 A.2d 889, 890 (R.I.1997)). The "primary ·purpose [of a bill of particulars] is to supply the defendant with such particulars. as are necessary in order that judicial surprise is avoided at trial." *Id.* (quoting *Collins,* 543 A.2d at 654). Having failed to seek a bill of particulars, a defendant should not be heard to complain about the lack of notice of the specificity of the charge.

We further note that, although a bill of particulars is not mandatory, *State v. Prefontaine,* 667 A.2d 531, 532 (R.I.1995), the timely objection to jury instructions at trial is required, *State v. Davis,* 877 A.2d 642, 648 (R.I.2005).· In *Davis,* 877 A.2d at 646, the defendant, Davis, claimed that the jury verdict· did not specify whether he was convicted on the basis of his role as a principal of the offenses charged or as an

aider or abettor. Davis had not requested a bill of particulars to clarify the charges against him before trial. *Id.* at 647. Further, despite being afforded the opportunity to review the jury instructions before the ⟨trial justice charged the jury, Davis did not object to the jury instructions or the jury-verdict form until he argued his motion for a new trial. *Id.* at 647–48. Since no issue of constitutional dimension underlay Davis's claim of error, this Court concluded that Davis had waived the issue on appeal. *Id.* at 648.

■ The circumstances in this case closely parallel those in *Davis.* Here, we are presented with a defendant who did not seek a bill of particulars, which could have clarified the issues that are now presented on appeal. Also like Davis, defendant had the opportunity to review and provide input regarding the jury instructions in advance of the charge to the jury but ultimately did not object to the instructions, nor did he object to the use of the jury-verdict form. The defendant also did not object on either of the two occasions that the requested portions of the transcript were read aloud to the jury. As in *Davis,* defendant posed his objection to the jury instructions and jury-verdict form for the first time when arguing his motion for a new trial—in this case, after the jury returned with a split verdict. As the raise-or-waive rule precluded Davis from challenging the jury instructions and jury-verdict form on appeal, *Davis,* 877 A.2d at 648, so too does it in this case.[6]

■ We pause to observe that, although the issue was not properly preserved for review on appeal, it also lacks merit. As this Court has declared, "[i]t is well settled that, absent a showing to the contrary, the jury will be assumed to have followed an instruction given it by the trial court in reaching its factual conclusions." *Mazzaro v. Narragansett Improvement Co.,* 109 R.I. 244, 250, 283 A.2d 887, 891 (1971); *see also State v. Whitfield,* 93 A.3d 1011, 1022 (R.I.2014) ("The Court presumes that members of the jury follow the trial justice's instructions."). Here, the trial justice instructed the jury to consider "two separate acts of sexual contact," in which the allegations were that "defendant touched [Emily]'s breast and shortly thereafter again touched [Emily]'s breasts and nipples." We also are satisfied that there was no confusion between or among the parties and the jury in this case. Throughout Emily's testimony—both on direct and cross-examination—Emily, the prosecutor, and defense counsel referred to the twenty-minute period when defendant touched Emily before he went to his truck and the alleged ten-minute period after he returned to the living room as two discrete occurrences. For example, defense counsel asked Emily, "[Y]ou told us that there were *two different occasions* that [defendant] touched your breast, correct?" (Emphasis added.) Emily, the prosecutor, and defense counsel repeatedly distinguished the two occurrences as the "first" and the "second" episode.[7] The two

---

**6.** There exists a "narrow exception" to the raise-or-waive rule. *State v. Mendez,* 116 A.3d 228, 242 n. 20 (R.I.2015). For that exception to apply, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *Id.* at 242–43 n. 20 (quoting *State v. Breen,* 767 A.2d 50, 57 (R.I.2001)).

We are not presented here with an error that involves a "novel rule of law" reasonably unknown to counsel at trial, and thus this narrow exception does not apply.

**7.** The following colloquy on cross-examination illustrates the distinction made at trial:

"Q  * * * Why did you get up [ten minutes after defendant started touching you again upon his return to the living room]?

questions submitted by the jurors—in which they referenced "the first incident" and "the second touching" respectively—suggest that the jurors also distinguished the incidents following the same scheme as used at trial.

Further, there was evidence adduced at trial that tended to suggest that the second incident may not have happened as Emily had testified but that the first incident did occur. On cross-examination, Officer Patrick Roy (Officer Roy) of the Woonsocket Police Department, the officer who responded to Emily's home when the police were first called, testified that Emily had told him that defendant had touched her before he went outside, but Officer Roy did not testify that Emily reported a second touching after defendant returned.[8] Moreover, the questions submitted by the jurors, in which they sought to shed light on "what happened *after* the first incident" (emphasis added) and Emily's "description of the second touching" but did not request to review testimony regarding the first incident, indicate the jury's particular interest in the evidence surrounding the second incident. *See Commonwealth v. Morales*, 70 Mass.App.Ct. 526, 874 N.E.2d 698, 705 (2007) ("The questions asked by the deliberating jury are of significance in

that they may demonstrate the jury's focus.").

Both Officer Roy's testimony and the jury questions suggest that the jury found that the prosecution had proven count 1, the first touching, beyond a reasonable doubt but had failed to establish count 2, the second touching, under the same standard. A unanimity instruction by the trial justice and the polling of the jury that revealed that the verdict was unanimous further demonstrate that the jury understood its charge and followed it accordingly. There simply is no evidence in the record before us to indicate that the jury suffered from any confusion. *See Vargas*, 991 A.2d at 1064 (refusal of the trial justice to differentiate between identically worded counts did not constitute error because there was "no evidence of juror confusion").

For this reason, this case differs from *Prefontaine*, 667 A.2d at 532, in which the Court granted a new trial where "[i]t [was] clear that the jury as well as the [trial] justice were hopelessly confused about what exact offenses had been committed for which [the] defendant was being tried." This case also is distinguishable from *Sa-*

---

"* * *
"A    Because I wanted to go to bed and I was scared.
"Q    The *second time* you wanted to go [to] bed and you were scared but weren't you scared the *first time?*
"A    Yes.
"Q    Tell the jury why you didn't get up the *first time* to go to bed[.]
"A    Because I was scared and I was just laying [*sic*] there. I didn't know what to do.
"Q    Well, were you scared to a greater degree the *first time* than you were the *second time?*" (Emphases added).

8. On this point, Officer Roy testified as follows:
"A    [Emily] informed me that she was sleeping on the couch in the living room

or she was asleep on the couch. She was awoken to [defendant] moving cushions around right. After that, the suspect * * * placed his hand inside her shirt underneath her bra for a short amount of time. After that, * * * defendant had gotten up, he went outside to his truck for an unknown reason and a short time later he returned back.
"Q    * * * [A]fter he came back, was there any conversation that she told you about, about she and [defendant]?
"A    I don't recall any dialogue between the two. I'm sorry, I can't recall that. He grabbed her arm and asked her where she was going. She didn't say. She just walked into her room."

*luter*, 715 A.2d at 1251, 1255, in which this Court vacated seven counts of a judgment of conviction because separate incidents of sexual assault were alleged in each count of the indictment. As we observed in *Davis*, 877 A.2d at 648–49, the reversible errors found in *Prefontaine* and *Saluter* are not present when the jury finds the defendant guilty of a crime in which only one offense is charged per count. Accordingly, *Prefontaine* and *Saluter* do not apply here.

## Conclusion

For the foregoing reasons, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.