June 10, 2021

**Supreme Court**

No. 2018-293-C.A.
(K3/16-488A)

State                           :

v.                              :

Lisa Ricker.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State     :

v.      :

Lisa Ricker.    :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  This case came before the Supreme Court on March 31, 2021, on appeal by the defendant, Lisa Ricker, from a judgment of conviction entered in the Superior Court following a jury verdict of guilty on one count of driving under the influence, in violation of G.L. 1956 § 31-27-2.  This prosecution arose from a motor vehicle stop that occurred on May 31, 2016.

On appeal, the defendant argues that the trial court erred in limiting cross-examination of a witness and abused its discretion in denying her motion for a new trial.  The defendant also raises two purported errors of law related to a jury instruction and the verdict form.  For the reasons set forth in this opinion, we affirm the judgment of conviction.

- 1 -

**Facts and Travel**

The testimony at trial revealed that defendant visited the Coventry Police Department on the afternoon of May 31, 2016, in order to seek assistance from the police regarding several matters. Officer Jadine Ferri was called in from patrol to speak with her.[1] The two conferred in the "counsel chambers" for ten to fifteen minutes, during which defendant stood and paced, eventually becoming upset. Then, abruptly, defendant left.

Afterwards, Officer Ferri, who was nearing the end of her shift, proceeded to her car. At trial, she testified that it was her practice to refill her police cruiser's gas tank before a shift change. Another car, driven by defendant, was also pulling out of the parking lot in front of Officer Ferri. The officer drove behind defendant's vehicle for less than a mile, later testifying that she observed defendant driving between five and ten miles an hour below the speed limit and swerving across both the inner and outer lines of the lane in which she was traveling. At that point, Officer Ferri turned on her emergency lights and pulled defendant's vehicle over.

At defendant's car, Officer Ferri did not ask her for identification or registration but noted that defendant had been crying. When asked why she was

---

[1] At trial, Officer Ferri testified that defendant reported the theft of pages from her diary, the disappearance of her old driver's license which she claimed later reappeared, and that her daughter had run away. According to Officer Ferri, defendant's daughter had not run away, but was living with her father, and the Coventry police were aware of this from a prior incident.

traveling west on Flat River Road, defendant told Officer Ferri that it was "none of [her] business." The defendant claimed to the officer that she had not been drinking although, Officer Ferri testified, defendant's eyes were bloodshot and watery, she spoke loudly and slurred her words, and the officer detected a faint odor of alcohol.

After backup arrived, Officer Ferri asked defendant to step out of her car, observing that, as she did so, defendant was leaning on the car to maintain her balance. Officer Ferri then asked defendant to perform three standard field sobriety tests—the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test. At trial, Officer Ferri testified that defendant, in her performance of these tests, exhibited multiple indicators that she was under the influence of an intoxicant. Then-Sergeant Kenneth Gebo, also present, asked defendant to perform two additional tests, the lack of convergence test and the Romberg balance test, later testifying that defendant's performance on these tests also indicated likely intoxication. At this point, Officer Ferri placed defendant under arrest and returned to the Coventry police station.

After making a phone call, defendant consented to a breath test. Officer Ferri, who was certified to operate the Intoxilyzer 9000,[2] observed defendant for the

---

[2] William Swierk, an inspector of breath analysis with the Rhode Island Department of Health (DOH), testified at trial that he tested the Coventry Intoxilyzer 9000 for accuracy and certified its compliance with DOH regulations on May 26, 2016, five days prior to defendant's test. *See State v. Cluley*, 808 A.2d 1098, 1102 (R.I. 2002) ("In any DUI prosecution, before breath-test results can be admitted as evidence of

requisite fifteen-minute period to ensure an accurate test, and then took two breath samples. The first sample showed a blood-alcohol content (BAC) of .083 grams of alcohol per 100 milliliters of blood and the second sample showed a BAC of .080. The defendant denied having had anything to drink that day but stated she had consumed a "big Bloody Mary" the prior evening and had taken some prescription medications.

On June 10, 2016, the Coventry Police Department charged defendant in the Third Division District Court with driving under the influence of alcohol, a misdemeanor, under § 31-27-2.[3] After she was found guilty at her District Court

---

a driver's alleged intoxication, qualified DOH agents must have tested the equipment in question for accuracy no more than thirty days before the police administer the breath test to any given suspect.") (citing G.L. 1956 § 31-27-2(c)(5)).

[3] When defendant was arrested and charged in 2016, § 31-27-2, which has since been slightly reworded, read as follows, in pertinent part:

> "(a) Whoever drives or otherwise operates any vehicle in the state while under the influence of any intoxicating liquor, drugs, toluene, or any controlled substance as defined in chapter 28 of title 21, or any combination of these, shall be guilty of a misdemeanor * * * and shall be punished as provided in subsection (d) of this section.
>
> "(b)(1) Any person charged under subsection (a) * * * whose blood alcohol concentration is eight one-hundredths of one percent (.08%) or more by weight as shown by a chemical analysis of a blood, breath, or urine sample, shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence. Proof of guilt under this section may also be based on evidence that the person charged was under the influence * * * to a degree that

bench trial in August 2016, defendant exercised her right to a *de novo* trial in the Superior Court, which took place in January 2018.

During trial, on January 10, 2018, at the end of defendant's cross-examination of Officer Ferri, the state objected to a line of questioning regarding a refusal affidavit included in Officer Ferri's police report, which had been offered by the state for identification only. The record shows that, despite her testimony that defendant had submitted willingly to the breathalyzer test, Officer Ferri also completed a notarized affidavit which stated that defendant had refused to comply. The state argued that cross-examination should be limited with regard to this affidavit, because it would confuse the jury. The state also explained to the trial justice and defense counsel at sidebar that it was the regular practice of the Coventry Police Department to complete such affidavits in every case, regardless of whether or not defendants had actually refused the test. The trial justice asked defense counsel where she was going with this line of questioning, and counsel replied that it was being offered "[j]ust to point out on that sheet it says, they can take it for whatever it is worth." Defense counsel also stated that it was her last question. The trial justice then sustained the state's objection, citing his "concern for misleading

rendered the person incapable of safely operating a vehicle. * * *" Section 31-27-2 (as amended by P.L. 2014, ch. 230, § 1; P.L. 2014, ch. 326, § 1).

- 5 -

and confusing the jury[,]" and cross-examination of Officer Ferri continued as to other matters.

Both the state and defendant rested on January 10, 2018. The following morning, before the trial justice gave the jury its instructions, defendant objected to the verdict form "with respect to the fact that on the verdict sheet we have the two options for a guilty verdict." The verdict sheet allowed the jury to "check one or both" of the following three options: "GUILTY because she was under the influence of intoxicating liquor and/or drugs to a degree that rendered her incapable of safely operating a motor vehicle"; "GUILTY because she was operating a motor vehicle in the state of Rhode Island with a blood alcohol level of 0.08%"; or "NOT GUILTY[.]" The defendant's objection was based on the fact that the criminal complaint stated only one charge: driving under the influence as evidenced by her BAC.[4] The trial justice disagreed, finding that the complaint could reasonably be read to include both theories. Consequently, the trial justice found the verdict sheet to be appropriate and left it intact.

When the jury entered the courtroom, the trial justice proceeded to instruct them on the law. Included was an instruction that, "if you find that the breathalyzer

---

[4] The criminal complaint filed in District Court described defendant's infraction as follows: "'Being then and there under the influence of intoxicating liquor and/or drugs to a degree which rendered her incapable of safely operating a motor vehicle, [defendant] did drive a motor vehicle within this state upon a public highway within the town of Coventry, to wit: Main Street, so called.' B.A.C. = .083/.080[.]"

test was administered within a reasonable time after the accident you may draw the inference that the blood alcohol level of the defendant at the time she was driving was as reported by the breathalyzer test." After the trial justice completed his instructions, defendant and the state pointed out an error in the instruction to the trial justice, *i.e.*, the use of the word "accident" in a case where there had been no accident, and the trial justice corrected the charge to the jury, asking that they substitute "motor vehicle stop" for the term "accident." The defendant made no other objections to the jury instructions.

Initially, the jury was unable to reach a unanimous verdict. However, after receiving an *Allen* charge[5] and submitting several questions to the trial justice, the jury returned a verdict. The jury foreperson first reported the verdict as not guilty, but after the trial justice looked at the completed verdict form, he noted that it was not in conformity with that statement. In fact, the jury unanimously found defendant guilty under the "second theory of intoxication," based on the blood-alcohol reading from the breathalyzer.[6]

---

[5] Called an *Allen* charge in reference to *Allen v. United States*, 164 U.S. 492 (1896), these charges by a trial justice to a deadlocked jury instruct such jury to return to deliberation and try again to reach a unanimous verdict. *Allen*, 164 U.S. at 501, 502 (finding no error in lengthy instructions to jurors struggling with unanimity, stating that "it was [the jury's] duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments").

[6] However, the jury was not unanimous in finding defendant not guilty under the first theory, *i.e.*, being incapable of safely operating a motor vehicle.

The defendant filed a motion for a new trial, which the trial justice heard and denied. The trial justice then sentenced defendant to one year at the Adult Correctional Institutions, with three months to serve in the home-confinement program and the remaining nine months suspended, with probation. The trial justice also suspended defendant's license for six months and ordered her to pay a $100 fine, perform ten hours of community service, undergo a substance-abuse evaluation, and abide by any treatment or counseling recommendations made by her probation officer. Thereafter, defendant timely appealed her conviction to this Court.

## Discussion

Before this Court, defendant argues that the trial justice erred in limiting her cross-examination of Officer Ferri. Additionally, defendant contends that the trial justice erred in denying her motion for a new trial. Finally, defendant argues that there were errors of law regarding a jury instruction and the verdict form that merit a new trial.

## Limitation of Cross-Examination

The defendant argues that the trial justice erroneously limited her cross-examination of the arresting officer by refusing to allow questioning about the officer's sworn affidavit, which contained a false statement.

"Inherent in a criminal defendant's constitutional right to confront witnesses against him or her—found in both article 1, section 10 of the Rhode Island Constitution and the Sixth Amendment to the United States Constitution—'is the fundamental right of the criminal defendant to cross-examine his or her accusers.'" *State v. Drew*, 919 A.2d 397, 411 (R.I. 2007) (quoting *State v. Stansell*, 909 A.2d 505, 509 (R.I. 2006)). However, "[w]hile criminal defendants possess the constitutional right 'to cross-examine prosecution witnesses,' such a right 'is far from absolute.'" *State v. Danis*, 182 A.3d 36, 40 (R.I. 2018) (quoting *State v. Manning*, 973 A.2d 524, 530 (R.I. 2009)). "This constitutional right 'is tempered by the dictates of practicality and judicial economy; trial justices are authorized to exercise sound discretion in limiting the scope of cross-examination.'" *Id.* (quoting *Manning*, 973 A.2d at 530). "As long as there is an opportunity for 'sufficient cross-examination to satisfy a defendant's constitutional confrontation rights, the trial justice may exercise [their] sound discretion in limiting further cross-examination.'" *Id.* at 41 (quoting *Manning*, 973 A.2d at 531). Accordingly, "we have previously stated that 'the exercise of discretion by the trial justice in limiting the scope of cross-examination will not be disturbed absent a clear abuse of that discretion.'" *State v. Ogoffa*, 159 A.3d 1043, 1049 (R.I. 2017) (quoting *State v. Walsh*, 731 A.2d 696, 698 (R.I. 1999)).

Before this Court, defendant asserts that her trial counsel sought to impeach the arresting officer by cross-examining the officer regarding her sworn affidavit. However, defendant's contention regarding the probative value of this inquiry was equivocal at best. At trial, defendant's counsel claimed that the testimony was being elicited "[j]ust to point out on that sheet it says, they can take it for whatever it is worth." The suggestion by counsel that the jurors ought to be able to "take it for whatever it is worth" does not clearly implicate defendant's Sixth Amendment right to confrontation.

Additionally, at the sidebar conference, the prosecutor made clear to the trial justice that the single-page "refusal affidavit" contained in the police report reflected the practice or procedure for all officers of the Coventry Police Department to complete such an affidavit in every case, even where the driver submits to the breathalyzer test. The defendant had no response to this assertion. In our view, the trial justice did not abuse his discretion by limiting this inquiry, stating:

> "I think it is confusing.
>
> "* * *
>
> "I'm not sure what real benefit you get from that other than that it is a strange procedure why they would include a form that is completely inapplicable to the circumstances in this case. * * * I think it is going to just be confusing to this jury and I don't think that it adds that much value to your cross. * * *"

Based on this analysis, the trial justice then sustained the objection, "out of [his] concern for misleading and confusing the jury." Rule 403 of the Rhode Island Rules of Evidence specifically provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues*, or *misleading the jury*[.]" R.I. R. Evid. 403 (emphasis added).

This Court has repeatedly held that a trial justice cannot be required to intuitively decipher the unvoiced bases of counsel's objections. *See, e.g.*, *State v. Doyle*, 235 A.3d 482, 495 (R.I. 2020) (requiring a specific objection in order to bring the purported error to the trial justice's attention). If defense counsel's strategy was to use the affidavit to question the witness's credibility, defense counsel ought to have made that argument to the trial justice. Having failed to do so, defendant does not convince us that the trial justice abused his discretion by limiting cross-examination as to the affidavit in question. *See Ogoffa*, 159 A.3d at 1052; *see also Crane v. Kentucky*, 476 U.S. 683, 688 (1986) (holding that judges in criminal cases who make decisions on the admissibility of evidence are entitled under the constitution to "'wide latitude' to exclude evidence that is 'repetitive * * *, only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues'") (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

The defendant argues that the limitation of her cross-examination of the arresting officer prejudiced her defense because impeaching the credibility of the

state's primary witness was vital to her case. Yet our examination of the record shows that the cross-examination of Officer Ferri that did occur successfully raised other examples of discrepancies between her reports and her testimony, giving the factfinder adequate grounds to question her credibility if inclined to do so. Furthermore, while the arguments of counsel are not evidence, defense counsel's closing argument drew the jury's attention to notable absences in Officer Ferri's testimony, such as the fact that no testimony suggested that defendant was intoxicated at the station, despite Officer Ferri's close proximity to defendant in a small conference room. Nevertheless, both the jury and the trial justice ultimately found Officer Ferri credible. Absent abuse of discretion, we will not disturb credibility determinations by the factfinder. *See State v. Marizan*, 185 A.3d 510, 518 (R.I. 2018) (noting that trial justices, given their proximity to the unfolding drama of the trial, are in "a much better position to make factual findings and credibility determinations than we are").

Furthermore, because the jury found defendant guilty based on the BAC readings and because a second witness testified to defendant's failure to perform additional sobriety tests, we are of the opinion that "even if the jury entirely discredited [Officer Ferri], the overall strength of the evidence was sufficient" to convict defendant of driving under the influence. *State v. D'Alessio*, 848 A.2d 1118, 1126 (R.I. 2004) (holding harmless any error in refusing to allow defense counsel to

pursue a line of questioning where other evidence existed sufficient to convict).

Consequently, the trial justice's limitation of the cross-examination here did not

constitute an abuse of discretion.

**Motion for a New Trial**

The defendant also argues that the jury's verdict was against the weight of the

evidence and failed to do substantial justice.

It is well established that "when a trial justice is presented with a motion for

a new trial based on the weight of the evidence, [the trial justice] acts as a thirteenth

juror and exercises independent judgment on the credibility of witnesses and on the

weight of the evidence." *State v. Gumkowski*, 223 A.3d 321, 328 (R.I. 2020) (quoting

*State v. Johnson*, 199 A.3d 1046, 1050-51 (R.I. 2019)). "The trial justice must

consider the evidence in light of the jury charge, then independently assess the

credibility of the witnesses and the weight of the evidence, and also ultimately

determine whether he or she would have reached a result different from that reached

by the jury." *Id.* (quoting *Johnson*, 199 A.3d at 1051). "If, after conducting this

independent review, the trial justice agrees with the jury's verdict or if the evidence

is such that reasonable minds could differ as to the outcome, the motion for a new

trial should be denied." *Id.* (quoting *Johnson*, 199 A.3d at 1051). "If, however, the

trial justice finds that the state has failed to prove the defendant's guilt beyond a

reasonable doubt, a new trial must be ordered." *State v. Cerda*, 957 A.2d 382, 385 (R.I. 2008).

"This Court's review of a denial of a motion for a new trial is deferential because the trial justice is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *Gumkowski*, 223 A.3d at 328 (quoting *Johnson*, 199 A.3d at 1051). "If the trial justice has articulated adequate grounds for denying the motion, [the] decision is entitled to great weight and will not be overturned by this Court unless [the trial justice] has overlooked or misconceived material evidence or was otherwise clearly wrong." *Id.* (quoting *Johnson*, 199 A.3d at 1051).

According to defendant, because the evidence offered at trial showed that her BAC was within the margin of error for the Intoxilyzer 9000, neither the jury nor the trial justice could conclude that she was guilty beyond a reasonable doubt. The defendant implies that, had the trial justice accorded the regulations and testimony the appropriate weight, it would necessarily follow that she would be entitled to a new trial. The defendant essentially argues that the presence of a margin of error, and the fact that her results fell within that margin of error, *per se* establish enough doubt to defeat the state's case against her. We do not agree.

In *State v. Lusi*, 625 A.2d 1350 (R.I. 1993), this Court stated that, "[g]enerally [we have] permitted the state to rely on evidence other than direct evidence as long

- 14 -

as the totality of that evidence constitutes proof of guilt beyond a reasonable doubt." *Lusi*, 625 A.2d at 1357. In consideration of that evidentiary standard, in the context of § 31-27-2, we held that "the plain and unambiguous language contained in the phrase 'other admissible evidence' makes it unmistakably clear that the Legislature intended to allow the state to supplement the breathalyzer-test results with other evidence." *Id.* In *State v. DiCicco*, 707 A.2d 251 (R.I. 1998), we reaffirmed that holding, stating that § 31-27-2 expressly allowed for the state to supplement BAC test results with "other admissible evidence, including the observations of law enforcement personnel who responded to the call to the scene." *DiCicco*, 707 A.2d at 254. Then, in *State v. McKenna*, 709 A.2d 1027 (R.I. 1998), this Court rejected the contention "that the jury failed to consider the margin of error of the breathalyzer machine properly" and the argument that, had they done so, "both breathalyzer readings would be below [the statutory threshold] and * * * no conviction would be possible." *McKenna*, 709 A.2d at 1029-30.

As the trial justice properly instructed the jury in this case:

> "[T]he burden is upon the [s]tate to prove beyond a reasonable doubt that this defendant is guilty of the charges * * *. It is a strict and heavy burden but it does not mean that the defendant's guilt must be proved beyond all possible doubt. * * *
>
> "Of course, a defendant is never to be convicted on suspicion or conjecture. * * * On the other hand, there are very few things in the world that we know with absolute

- 15 -

certainty and in criminal cases the law does not require proof that overcomes every possible doubt."

The evidence as to the margin of error here may cast some doubt on whether defendant was guilty under the statute, but the jury was not required to reject the BAC readings, nor did this evidence negate a finding of guilt from the determination of a reasonable factfinder. In fact, when performing his analysis as the thirteenth juror, the trial justice explicitly considered the margin of error, noting that the testimony from Mr. Swierk showed that "a .080 reading [could be] as high as .085 or as low as .075 based upon this margin of error." The trial justice did not discount or fail to consider the impact of the margin of error, instead finding that it cut both ways. In other words, it was just as likely that the breath-test results underreported defendant's blood alcohol level by .005. Therefore, we find that the trial justice adequately considered the evidence regarding the margin of error in light of the jury charge.

Additionally, the trial justice found all three witnesses called by the state credible and specifically stated that he agreed with the jury's verdict. Trial justices occupy a position better suited to the making of factual findings and credibility determinations than that of this Court because they "actually observed the human drama that is part and parcel of every trial and * * * [were privy to] realities that cannot be grasped from a reading of a cold record." *State v. Gonzalez*, 986 A.2d 235, 242 (R.I. 2010); *see Marizan*, 185 A.3d at 518. Our review of the record shows that

- 16 -

the trial justice gave a more than adequate explanation of his rationale for denying defendant's motion, neither overlooking nor misconceiving any material evidence. *See State v. Mendez*, 116 A.3d 228, 247 (R.I. 2015) (holding that the "trial justice 'need not refer to all the evidence supporting [the justice's] decision,' but need only 'cite evidence sufficient to allow this Court to discern whether the trial justice has applied the appropriate standards'") (brackets omitted) (quoting *State v. Robat*, 49 A.3d 58, 71 (R.I. 2012)). Therefore, we discern no error in the trial justice's denial of defendant's motion for a new trial based on the weight of the evidence.

## Jury Instruction and Verdict Form

Finally, defendant contends that both the jury instruction regarding the breathalyzer results and the verdict form listing two separate theories of guilt constituted errors of law, warranting a new trial.

"The raise-or-waive rule is a fundamental precept that is staunchly adhered to by this Court." *State v. Parrillo*, 228 A.3d 613, 623 (R.I. 2020). "It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *Id.* (brackets omitted) (quoting *Cusick v. Cusick*, 210 A.3d 1199, 1203 (R.I. 2019)). Furthermore, "[t]his Court's raise-or-waive rule requires a *specific* objection to preserve an issue for appeal." *Id.* at 625; *see State v. Pona*, 66 A.3d 454, 468 (R.I. 2013) ("We require a specific objection so that the

- 17 -

allegation of error can be brought to the attention of the trial justice, who will then have an opportunity to rule on it.").

First, defendant contends that the jury instruction regarding the breathalyzer results impermissibly removed the issue of the reliability of the breathalyzer test results from the fact-finding function of the jury. Initially, we note that the instruction given to the jury allowed for a permissive inference, not a mandatory one, when it stated that the jury "may draw the inference" rather than using the term "shall" or "must." In *Lusi*, cited *supra*, this Court noted that "[a] mandatory [inference] * * * poses a far greater threat to the adversary system than a permissive [inference]" because "[a] permissive [inference] allows, but does not require, the trier of fact to infer the elemental fact from proof by the state of the base fact." *Lusi*, 625 A.2d at 1356 (pointing out that, in criminal cases, "an inference must never 'undermine the factfinder's responsibility at trial, based on evidence adduced by the [s]tate, to find the ultimate facts beyond a reasonable doubt'") (quoting *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 156 (1979)). In other words, because the trial justice told the jury merely that it was permitted to make an inference does not mean that it removed any issue from the fact-finding function of the jury, as defendant contends.

Furthermore, while the trial justice's phrasing of the instruction in question could reasonably be interpreted two ways, there was no objection to this aspect of

the wording of the jury instruction at trial.[7] This is "[f]atal to defendant's challenge" because "Rule 30 of the Superior Court Rules of Criminal Procedure provides, in relevant part, that 'no party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict[.]'" *State v. Hunt*, 137 A.3d 689, 693 (R.I. 2016) (brackets omitted) (quoting Super. R. Crim. P. 30); *see Mendez*, 116 A.3d at 243. Therefore, "[b]ecause defendant's contention was not properly preserved for appellate review and there is no issue of constitutional dimension presented, defendant has waived the issue on appeal." *State v. Lastarza*, 203 A.3d 1159, 1165 (R.I. 2019); *see State v. Andrade*, 209 A.3d 1185, 1198 (R.I. 2019) (holding that appellate review of jury instructions was waived where the "defendant did not raise any of these alleged errors to the trial justice either before or after the trial justice charged the jury with the instructions").

The second legal error argued by defendant as grounds for a new trial, that the verdict form confused the jury, is also unpreserved on this record. *See Hunt*, 137 A.3d at 693 ("The raise-or-waive rule similarly applies to an appellate challenge to

---

[7] The instruction that, "if you find that the breathalyzer test was administered within a reasonable time after the [motor vehicle stop] you may draw the inference that the blood alcohol level of the defendant at the time she was driving was as reported by the breathalyzer test[,]" could mean, as defendant argued, that the timeliness of the breathalyzer test somehow established its reliability. However, the instruction could also reasonably be read to state the commonsense conclusion that the timeliness of the test meant that the blood alcohol level the test revealed was comparable to the one defendant had while driving.

the jury-verdict form[.]").  The defendant contends that her objection to the verdict form was preserved at trial when she very clearly articulated an objection to the presentation of both theories of guilt to the jury due to the state's specification on the criminal complaint of only one theory.[8]  We note that defendant argued below that, because she read the complaint as advancing only a single theory of guilt under § 31-27-2, she chose not to seek a bill of particulars.  This Court has been very clear in the past that the "primary purpose [of a bill of particulars] is to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial." *Hunt*, 137 A.3d at 693 (quoting *State v. Saluter*, 715 A.2d 1250, 1253 (R.I. 1998)).  "Having failed to seek a bill of particulars, a defendant should not be heard to complain about the lack of notice of the specificity of the charge." *Id.*

We note that defendant's argument regarding this alleged error in her motion for a new trial cannot cure the absence of a timely objection prior to the presentation of the verdict form to the jury. *See Mendez*, 116 A.3d at 245 (reaffirming that, in the context of instructions given to the jury, "it is required that the objecting party not only voice the objection contemporaneously with the perceived error, but it is further required that all grounds for the objection be brought to the attention of the presiding

---

[8] However, the trial justice rejected this argument and pointed out, twice, that the justice's reading of the criminal complaint would include both theories.

judicial officer at that time"). The trial justice acknowledged this necessity when, in ruling on defendant's motion for a new trial, he pointed out that he had asked for suggestions on the verdict form and provided the parties with two versions, stating, "I didn't get any * * * response to my invitation to help me and we agreed on this one as the one to go to the jury and nobody said don't do that, that is not a good verdict sheet it is going to confuse them."

Notwithstanding precedent of this Court, defendant also argues that the trial justice's statement that the verdict sheet would "avoid[] some confusion or jumping to conclusions or muddying of the waters" relieved her of any burden to articulate jury confusion as a basis for her objection to the verdict form going forward. In fact, defendant claims that "the record reveals that another such objection would have been futile." However, she cites no caselaw for this contention, and she cannot— this is simply not how the preservation of issues for appellate review functions in Rhode Island. *See Hunt*, 137 A.3d at 693 (noting that, "although a bill of particulars is not mandatory, * * * the timely objection to jury instructions at trial is required"); *see also Mendez*, 116 A.3d at 245.

After a thorough review of the record, we find that neither of these alleged errors of law was preserved for our review, and both are thus waived. *See Hunt*, 137 A.3d at 693.

**Conclusion**

For the reasons articulated above, this Court affirms the judgment of conviction. The papers in this case may be returned to the Superior Court.

**Justice Robinson, dissenting.** I respectfully dissent from the majority opinion in this case due to my conviction that the trial justice abused his discretion in limiting defense counsel's cross-examination of Officer Jadine Ferri. In my opinion, this case should be vacated on that ground and remanded for a new trial.

Toward the end of the cross-examination of Officer Ferri, Ms. Ricker's counsel attempted to question Officer Ferri about the fact that she had sworn, in an affidavit (which was marked for identification at trial), that Ms. Ricker had *refused* to take the breathalyzer test. That statement in the affidavit was directly contrary to Officer Ferri's testimony at trial that Ms. Ricker had *consented* to the breathalyzer.[1] The prosecutor objected on relevance grounds and suggested that this line of inquiry had the potential to confuse the jury.[2] The prosecutor explained to the trial justice

---

[1] I note that Ms. Ricker's counsel first asked Officer Ferri if the fact that the affidavit was notarized showed that she was swearing to the truthfulness of what was contained in the document, and she answered: "Yes * * *."

[2] The prosecutor also mentioned hearsay in the course of his objection. However, that was not the basis for the trial justice's ruling, and it is not an issue which has been briefed on appeal. *See Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n.1 (R.I. 2002); *State v. Vorgvongsa*, 692 A.2d 1194, 1197 (R.I. 1997).

at sidebar that the reason why Officer Ferri had signed the affidavit attesting to Ms. Ricker's supposed refusal to take the breathalyzer, in spite of the fact that Ms. Ricker had actually consented to the breathalyzer, was because that was the procedure of the Coventry Police Department. The prosecutor added that that procedure was "unique to Coventry" and was "the oddest thing." Ms. Ricker's counsel contended that "[t]here has been testimony that [Ms. Ricker] took the breath test and on the officer's report it says that she refused to take the test" and that the jury could "take it for whatever it is worth."[3] The trial justice then ruled that allowing Ms. Ricker's question would be "misleading and confusing [for] the jury" and did not "add[ ] that much value to [Ms. Ricker's] cross."

Ms. Ricker contends on appeal that the question at issue was "highly relevant" and had a direct bearing on "the trustworthiness of the testimony of a key witness and it should not have been kept from the jury." I wholeheartedly agree.

---

[3] Contrary to the majority, in my judgment, the statement by defense counsel made it sufficiently clear that she intended to use the sworn affidavit to question Officer Ferri's credibility, which implicates defendant's Sixth Amendment right to confrontation. The sentence in the text to which this footnote relates specifically quotes defense counsel contrasting the testimony (by Officer Ferri) that Ms. Ricker "took the breath test" with the statement in the affidavit that "she refused to take the test." Those two statements are directly contradictory to one another and had the potential to fatally undermine the credibility of Officer Ferri, who swore to the veracity of each.

I certainly acknowledge, at the outset, that under Rule 403 of the Rules of Evidence a trial justice "retain[s] a considerable degree of discretion to impose reasonable limitations on cross-examination in order to prevent, *inter alia*, harassment, prejudice, confusion, or repetitive testimony." *State v. Tiernan*, 941 A.2d 129, 134 (R.I. 2008). Additionally, it is true that, in a context such as the one before us, "[t]he [trial justice's] ruling must amount to prejudicial error to constitute a clear abuse of [that] discretion." *State v. Bojang*, 83 A.3d 526, 538 (R.I. 2014) (internal quotation marks omitted). However, the United States Supreme Court has memorably stated that "this principle cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." *Gordon v. United States*, 344 U.S. 414, 423 (1953); *see also State v. Anthony*, 422 A.2d 921, 924 (R.I. 1980) ("[Cross-examination] is the principal means by which the credibility of the witness and the truthfulness of his [or her] testimony can be tested."). Indeed, this Court has also stated that "it is the *essence* of a fair trial that *reasonable latitude* be given the cross-examiner." *Tiernan*, 941 A.2d at 134 (emphasis in original) (internal quotation marks omitted); *see also Anthony*, 422 A.2d at 924. Furthermore, "the authority of the trial justice to limit cross-examination comes into play [only] *after* there has been permitted as a matter of right *sufficient* cross-examination to satisfy the Sixth Amendment." *Tiernan*, 941 A.2d at 134 (emphasis in original).

In my judgment, the trial justice committed an abuse of discretion in limiting the cross-examination of Officer Ferri in this case in a manner which deprived Ms. Ricker of her right to explore the trustworthiness of the primary witness against her.

The Sixth Amendment to the United States Constitution "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him [or her]." *Id.* at 132 (internal quotation marks omitted). "[T]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Id.* at 133 (emphasis in original) (internal quotation marks omitted); *see also Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) ("[The right to cross-examine] is implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth-determining process.") (internal quotation marks omitted); *State v. Ogoffa*, 159 A.3d 1043, 1052 (R.I. 2017) ("[W]e have stated that a criminal defendant has a well-established, constitutionally-protected right * * * to [an] effective cross-examination of the prosecution's witnesses.") (internal quotation marks omitted). In our adversary system, a criminal defendant has the constitutional right to portray an adverse witness (and particularly an accusing witness) in a light as unflattering as the rules of evidence will allow. *See State v. Covington*, 69 A.3d 855, 865 (R.I. 2013) ("It is well settled that [d]ue process requires that every defendant have a full opportunity to establish the best and fullest defense available to him.") (internal quotation marks omitted).

Cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth," and it is the "principal means by which the credibility of the witness and the truthfulness of his [or her] testimony can be tested." *Tiernan*, 941 A.2d at 133, 134 (internal quotation marks omitted); *see also State v. Briggs*, 886 A.2d 735, 745 (R.I. 2005) (stating that the right of a defendant to cross-examine the witnesses against him or her "is the primary means by which a criminal defendant may challenge the veracity of a witness's testimony"). For that reason, the "denial or significant diminution" of the right to cross-examine "calls into question the ultimate integrity of the fact-finding process * * *." *Chambers*, 410 U.S. at 295 (internal quotation marks omitted). Indeed, "[c]ross-examination, when well conducted, is not a desiccated syllogistic exercise, but is rather a multifaceted attempt at unveiling what might lie behind the direct testimony of the witness." *Tiernan*, 941 A.2d at 133.

In my opinion, Ms. Ricker's counsel should have been permitted to question Officer Ferri about the blatant inconsistency between her *sworn* affidavit and her *sworn* testimony at trial. That issue went directly to Officer Ferri's credibility and her trustworthiness as a witness. If the question had been permitted, the prosecutor would then have been free to ask Officer Ferri on redirect examination if she included the statement that Ms. Ricker refused the breathalyzer in her sworn affidavit only because it was the policy of the Coventry Police Department to do so

- 26 -

in every case.[4] Contrary to the trial justice and the majority, I can perceive nothing about that line of questioning which would have been confusing to the jury or would have created any kind of unnecessary delay. A trial justice's discretion under Rule 403 "must be exercised sparingly." *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1193 (R.I. 1994); *see also State v. Moreno*, 996 A.2d 673, 683 (R.I. 2010) ("This Court has stated that a trial justice's discretion to exclude evidence under Rule 403 must be used sparingly.") (internal quotation marks omitted). "The determination of the value of evidence should normally be placed in the control of the party who offers it. Unless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." *Wells*, 635 A.2d at 1193; *see also Boscia v. Sharples*, 860 A.2d 674, 678 (R.I. 2004). I reiterate that I cannot detect any prejudice or likelihood of confusing the jury in allowing the veracity of this critical witness to be challenged by questioning her about her contradictory sworn statements. More importantly, in my judgment, the credibility of Officer Ferri was not just relevant, it was of supreme importance. She was the principal accuser, and Ms. Ricker was wrongly deprived of an opportunity to strikingly demonstrate to the jury the officer's lack of regard for the truth.

---

[4] If indeed there eventually were testimony about the existence of such a policy in Coventry, defense counsel could then follow up with a question to Officer Ferri as to why she would knowingly swear to a falsehood even if such were the policy. And one or more jurors might proceed to look with a jaundiced eye on an officer of the law who so blithely would swear to such a blatant falsehood.

Officer Ferri testified about her observations of Ms. Ricker during their initial interaction in the police station; she stated that Ms. Ricker was "erratic," "antagonistic," "outlandish," and "just angry." But she did not testify that she perceived any indications of impairment during the "10 or 15 minute[ ]" encounter. However, it was then her testimony that, shortly thereafter, she pulled Ms. Ricker's vehicle over because it was traveling five to ten miles an hour below the speed limit, crossed the double yellow line, and drove into the bike lane. Inexplicably, Officer Ferri testified that, at that time, she saw various signs of impairment—*viz.*, "watery bloodshot eyes," "slurred speech," and "a faint odor of alcohol"—despite not having testified to having observed those signs during their meeting at the police station. Also, she was the only witness who observed Ms. Ricker's driving before pulling her vehicle over. The jury should have been permitted to determine whether or not to find her testimony credible with the knowledge that she made an untrue statement on a sworn affidavit—a statement that was the exact opposite of what she testified to at trial. *See generally Boscia v. Massaro*, 529 A.2d 504, 508 (Pa. Super. Ct. 1987) ("In our system of justice, the jury is sacrosanct and its importance is unquestioned. The members of a jury see and hear the witnesses as they testify. They watch them as they sweat, stutter, or swagger under the pressure of cross-examination. This enables the jury to develop a feel for the case and its personal dynamics which cannot be conveyed by the cold printed page of a record reproduced for appellate review.").

What is more, I cannot say that the trial justice's abuse of discretion in failing to allow the cross-examination at issue in this case was harmless. *See State v. Oliveira*, 961 A.2d 299, 312 (R.I. 2008). Even though the jury ultimately convicted Ms. Ricker on the basis of her breathalyzer test results, and not on any of the other evidence of impairment, Officer Ferri's credibility was still very much at issue. Officer Ferri conducted the breathalyzer test. That test requires an observation period of fifteen minutes before administering the test, which observation period Officer Ferri testified that she conducted. She also testified to placing a new mouthpiece on the instrument with which the breathalyzer test is administered before each of the breath tests; and she also testified that, in administering the test, she followed an "operational checklist" and her training. She further testified that she wore gloves while administering the test. As such, Officer Ferri's credibility was directly relevant to the breathalyzer test results.[5] Accordingly, failing to allow cross-examination of the primary witness against Ms. Ricker that was directly relevant to that witness's credibility was a clear abuse of discretion by the trial justice and constituted reversible error.[6]

---

[5] Nor do I think that the fact that other discrepancies were highlighted in Officer Ferri's testimony somehow renders the failure to allow this particular aspect of the cross-examination harmless.

[6] I deem it necessary to add that, in my opinion, an offer of proof was not necessary with respect to the line of questioning at issue. It was made clear to the trial justice at sidebar what the relevance of the questioning would be and what the

For the above-stated reasons, I respectfully, but emphatically and even passionately, dissent from the majority's opinion in this case.

---

expected response would be; and the document which formed the basis of the questioning—*i.e.*, the refusal affidavit—had been marked as an exhibit for identification at trial. *See State v. Cote*, 691 A.2d 537, 541 (R.I. 1997) ("The purpose of an offer of proof is to enable the court to determine the materiality, relevance, and competence of the evidence.") (internal quotation marks omitted); *see also Sheeley v. Memorial Hospital*, 710 A.2d 161, 164 (R.I. 1998) (stating that "in cases in which the ruling appealed from is one excluding evidence, the substance of the evidence [had to be] made known to the court by offer *or* was apparent from the context within which questions were asked before its exclusion can serve as a basis of error[;] [i]f, however, the nature of the evidence offered clearly describes the relevance and competence of the offered evidence, no such offer of proof is necessary") (emphasis in original) (internal quotation marks omitted). I would additionally note that we have stated that "the doctrine of offer of proof will be relaxed where counsel is cross-examining a witness." *Cambra v. Cambra*, 114 R.I. 553, 558, 336 A.2d 842, 845 (1975).



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Lisa Ricker. |
| **Case Number** | No. 2018-293-C.A. (K3/16-488A) |
| **Date Opinion Filed** | June 10, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For State: Christopher R. Bush Department of Attorney General |
| | For Defendant: Megan F. Jackson Office of the Public Defender |